UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

_____

XAVIER JAJUAN DAVIS
an Individual,

Plaintiff,                                    CASE NO.:
v.                                            Hon.

CITY OF GRAND RAPIDS,
a municipality, KEVIN SNYDER, an
individual, ADAM BAYLISS, an individual,
KRISTEN ROGERS, an individual,

Defendants.
_____

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, Mr. Xavier Jajuan Davis ("Plaintiff" or "Mr.

Davis"), by and through his Attorney, Mark Linton, and states for this

Honorable Court:

## JURY DEMAND

1.    Mr. Davis hereby demands a trial by jury.

## JURISDICTION AND VENUE

2.    This is a civil rights action in which the Plaintiff, Mr. Xavier Jajuan

      Davis seeks relief for violation of his rights secured by 42 U.S.C.

      § 1983, Constitution of the United States and Michigan state law.

3.   Jurisdiction of this Court is found upon 28 U.S.C. § 1331, § 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1376(a).

4.   The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs, and attorney fees.

5.   The events giving rise to this cause of action took place in the City of Grand Rapids, Kent County, Michigan.

6.   Venue is properly laid in the Western District of Michigan under U.S.C. § 1391(b)(1) and U.S.C. § 1391(b)(2) since the events giving rise to this action occurred in Grand Rapids, Michigan; Mr. Davis resides in the City of Grand Rapids, Kent County, Michigan and Defendants are agents of the Grand Rapids Police Department.

## PARTIES

7.   Plaintiff, Mr. Xavier Jajuan Davis was and is a resident of the City of Grand Rapids, Kent County, Michigan.

8.   Defendant City of Grand Rapids, is a municipal corporation in the county of Kent, State of Michigan existing under the laws of the State of Michigan.

9.   Defendant Detective Kevin Snyder, at all relevant times, was employed by the City of Grand Rapids as a Grand Rapids Police Department ("GRPD")

Detective, and is being sued individually and in his official capacity, jointly and severally with the other Defendants named.

10. Defendant Lieutenant Kristen Rogers, at all relevant times, was employed by the City of Grand Rapids as a GRPD Lieutenant, and is being sued individually and in her official capacity, jointly and severally with the other Defendants named.

11. Defendant Detective Adam Bayliss, at all relevant times, was employed by the City of Grand Rapids as a GRPD Detective, and is being sued individually and in his official capacity, jointly and severally with the other Defendants named.

12. Defendants Detective Kevin Snyder, Detective Adam Bayliss, and Lieutenant Kristen Rogers (Collectively, "Defendant Officers") are employees and agents of the Grand Rapids Police Department ("GRPD"), the jurisdiction of which includes the City of Grand Rapids, Kent County, Michigan.

13. At all times relevant to this Complaint, Defendant Officers were acting within the scope and course of their employment and under color of law.

14. Defendant Officers are being sued in their individual and official capacities.

15. The events giving rise to this cause of action occurred in the City of Grand Rapids, Michigan.

## GENERAL ALLEGATIONS

16.  On September 11, 2017, Mr. Davis went to the Grand Rapids Police Department where he was questioned by Defendant Detective Adam Bayliss as a potential suspect in a breaking and entering case, and an arson case.

17.  While at the Grand Rapids Police Department, Detective Adam Bayliss questioned Mr. Davis' whereabouts on the evening in June 2017 when the breaking and entering took place.

18.  In response to Detective Adam Bayliss' questioning, Mr. Davis explained that he was at work at Rockwell Republic, 45 Division Ave S, Grand Rapids, Michigan on the night of the breaking and entering.

19.  Detective Adam Bayliss also questioned Mr. Davis with respect to an arson case. In response to that line of questioning, Mr. Davis explained that he did not own a vehicle and was not in the relevant area at the time the arson was committed.

20.  Upon information and belief, Detective Adam Bayliss asked Mr. Davis to consent to a warrantless search of his cell phone; Mr. Davis did not consent to the search.

21.  Upon information and belief, after meeting with Detective Adam Bayliss, Mr. Davis made a phone call to either the Mayor's Office or the City

4

Attorney's Office to explain that he felt GRPD was targeting him for the arson and breaking and entering cases based on his prior Home Invasion conviction.

22. Upon information and belief, Detective Adam Bayliss later called Mr. Davis to say that he was only doing his job and he was upset that Mr. Davis had contacted the City.

23. Upon information and belief, Detective Adam Bayliss continued to attempt to tie Mr. Davis to various crimes even though no substantive evidence existed.

24. Upon information and belief, sometime in October or November, Detective Adam Bayliss informed Mr. Davis that GRPD had obtained a warrant to search video footage the Detective believed would incriminate Mr. Davis.

25. Mr. Davis maintained that the video evidence would not incriminate him because he had not committed the crimes Detective Adam Bayliss had been accusing him of.

26. Upon information and belief, Detective Adam Bayliss did not follow up with Mr. Davis regarding the breaking and entering case, or the arson case. On January 10, 2018, Mr. Davis called Detective Adam Bayliss to inquire as to the status of the cases in which he was being investigated as a suspect.

27.   Upon information and belief, Detective Adam Bayliss refused to reveal to
      Mr. Davis the status of the investigations against him on January 10, 2018.

28.   After speaking with Detective Adam Bayliss, on January 10, 2018 Mr. Davis
      called Defendant Lieutenant Kristen Rogers to inquire into the status of the
      cases in which he was being investigated as a suspect.

29.   Upon information and belief, Lieutenant Kristen Rogers informed Mr. Davis
      that the breaking and entering and arson cases in which he had been under
      investigation as a suspect had been closed.

30.   Upon information and belief, Lieutenant Kristen Rogers did not inform Mr.
      Davis on January 10, 2018 that he was being investigated by the Grand
      Rapids Police Department for Two Counts of Criminal Sexual Conduct in
      the First Degree and One Count of Criminal Sexual Conduct in the Second
      Degree.

31.   Upon information and belief Detective Kevin Snyder did communicate to
      Lieutenant Kristen Rogers that he believed she should obtain a warrant for a
      DNA sample from Mr. Davis and see if the sample was a match with the
      DNA from the criminal evidence prior to arresting Mr. Davis.

32.   Despite the lack of probable cause, Lieutenant Kristen Rogers did order
      officers to arrest Mr. Davis for Criminal Sexual Conduct.

33.   On or about January 14, 2018, at or about 5:00 p.m., Mr. Davis arrived at the
      Grand Rapids Greyhound Bus Station, 300 Ellsworth SE, Grand Rapids,
      Michigan, where he was handcuffed and arrested by US Marshals.

34.   Mr. Davis was told that he was accused of numerous counts of Criminal
      Sexual Conduct, including rape. Mr. Davis was transported in the back of a
      police cruiser from the Greyhound Bus Station to the Grand Rapids Police
      Department, where Defendant Detectives Kevin Snyder and Alan Ort
      interrogated him and collected a sample of his DNA.

35.   On information and belief, the primary basis for having Mr. Davis publicly
      arrested was that the officers compared his picture to a sketch drafted based
      on a description of the victim in a rape case, Cassandra Carroll ("Ms.
      Carroll").

36.   Upon information and belief, Detectives Kevin Snyder and/or Alan Ort told
      Ms. Carroll that they had arrested a suspect and he matched the sketch.

37.   Even though Ms. Carroll could not recall how the suspect looked, due to the
      unduly suggestive manner in which Detectives Kevin Snyder and/or Alan
      Ort presented Mr. Davis' picture and attempt to link him to the crime, Ms.
      Carroll did indicate he could have been the suspect.

38. On information and belief, the rape of Cassandra Carroll occurred early in the morning hours of December 28, 2017, in her parked car at or near 4249 Kalamazoo Ave SE, Grand Rapids, MI ("L & N Carpet Cleaning").

39. At the time he was arrested, Mr. Davis vehemently denied any knowledge of the crime and explained to police that he was nowhere near L & N Carpet Cleaning on the morning of December 28, 2017, and that the Uber and his phone records would corroborate that fact.

40. On information and belief, Defendants' theory regarding Mr. Davis' commission of the rape of Ms. Carroll was that Mr. Davis had taken an Uber from his residence at 1049 McReynolds Ave NW, Grand Rapids, Michigan to the area near L & N Carpet Cleaning because Mr. Davis does not own a vehicle.

41. GRPD transported Mr. Davis to the Kent County Jail on charges of Criminal Sexual Conduct, despite Mr. Davis insisting throughout the police interrogation that he was not guilty of the crimes charged.

42. Mr. Davis spent three nights in jail before he was arraigned on January 17, 2018 on two counts of Criminal Sexual Conduct in the First Degree in violation of MCL 750.520B1E and one count of Criminal Sexual Conduct in the Second Degree in violation of MCL 750.520G2.

43.   Upon information and belief, on January 17, 2018, Mr. Davis was also arraigned over video on a separate count of Criminal Sexual Conduct ("Second Offense") in the Second Degree in violation of MCL 750.520G2.

44.   The Second Offense occurred at the DeVos Place Convention Center, 303 Monroe Ave NW, Grand Rapids, Michigan ("DeVos Place"), in which the victim alleges an employee of the DeVos Place came up to her and said she had a phone call.

45.   The victim indicated that she was lead to a room in the facility where the employee unlocked a door to a utility room and that he then sexually assaulted her in the utility room.

46.   The Second Offense arose because even though victim in the case indicated she did not want to pursue charges, Detective Kevin Snyder remembered that Mr. Davis was an employee of the DeVos Place, the location of the alleged Second Offense.

47.   Detective Kevin Snyder knew, or should have known, that Mr. Davis did not start his employment with the DeVos Place until approximately one month after the Second Offense occurred and Mr. Davis could not possibly have been the employee who perpetrated the crime.

48. Despite the victim noting she did not recall what the perpetrator looked like, Detective Kevin Snyder decided he would go to the victim and inquire if it could have been Mr. Davis.

49. After being unduly coerced by Detective Kevin Snyder, the victim of the Second Offense agreed it was possible that the perpetrator was Mr. Davis.

50. Detective Kevin Snyder was responsible for having Mr. Davis charged with the Second Offense.

51. While at the Kent County Jail, Mr. Davis suffered severe emotional distress and extremely high levels of anxiety. While at Kent County Jail, Mr. Davis was prescribed 50mg of Visceral in an attempt to control his anxiety.

52. After his arraignment on January 17, 2018, Mr. Davis returned to the Kent County Jail, where he was assaulted by another inmate, Christopher Bulow. Following the assault, Mr. Davis was placed in a one-man cell for his protection.

53. On January 18 and 19, 2018, local news reports include Mr. Davis's first and last name, as well as his photograph, and indicate that he is accused of two separate incidents of Criminal Sexual Conduct.

54. Upon information and belief, GRPD determined Mr. Davis was not the perpetrator and closed the case for the Second Offense in February of 2018, but they did not cause the charge to be dropped at that time.

55. GRPD did subpoena and obtain the Uber records that confirmed that he did not take an Uber to the area of L & N Carpet Cleaning at any point on December 28, 2017, the morning Ms. Carroll was raped. (Exhibit 5 - Xavier Davis Uber Records), but Mr. Davis remained in custody at the Kent County Jail.

56. GRPD did subpoena and obtain Mr. Davis' phone records, which further corroborated that he was not in the area based on records that were subpoenaed regarding his location at the time, but Mr. Davis remained in custody at the Kent County Jail.

57. The DNA test results confirm that he could not have been the source of the DNA found on the victim's pants or a part of a condom wrapper found in her vehicle, but Mr. Davis remained in custody at the Kent County Jail after obtaining the DNA results.

58. Upon information and belief, the Officers became aware of the evidence corroborating Mr. Davis was not in the area at the time of the crime as well as the DNA test results excluding him as being a source beginning in February of 2018 and as late as March of 2018, but Mr. Davis was not cleared as a suspect and released from jail.

59. Mr. Davis was finally released on bond from the Kent County Jail on May 22, 2018 after serving a total of 129 days in jail for crimes he did not

commit. When Mr. Davis was released, a GPS Tether was placed on his right ankle and the charges were not dismissed.

60. As a result of Defendants' actions, Mr. Davis was evicted from his rental home and was homeless for a week after he was released from jail.

61. As a result of Defendants' actions, Mr. Davis was terminated from his employment at both the DeVos Place and The B.O.B. Nightclub, 20 Monroe Ave NW, Grand Rapids, Michigan ("The B.O.B.").

62. After the news reports indicating that Mr. Davis had been charged with the commission of multiple sexual assaults surfaced, he was banned from entering the premises of either DeVos Place or the B.O.B.

63. Upon information and belief, Mr. Davis remains banned from both the DeVos Place and the B.O.B. as of the time of the filing of this complaint.

64. On July 23, 2018, the felony complaints against Mr. Davis were dismissed on motion of the Kent County Prosecutor.

65. Upon information and belief, the case for the Second Offense was closed by GRPD sometime in February of 2018, but the charges against Mr. Davis were not dismissed until July 23, 2018.

66. Despite having clear exculpatory evidence for the rape case dating back to February of 2018, the charges against Mr. Davis were not dismissed until July 23, 2018.

67.    Mr. Davis' picture from when he was booked at his arrest was placed next to the original sketch of the rape suspect and was placed on the GRPD Facebook page after Mr. Davis' arrest.  Despite repeated requests by Mr. Davis and a letter from his attorney dated August 1, 2018 asking that the picture be taken off the Facebook page, his picture next to a sketch of the suspect remains on the page as of the filing of this Complaint.

68.    Defendants knew, or should have known, that the allegations against Mr. Davis were untrue because there was no physical evidence linking Mr. Davis to the crime, there were Uber and phone records clearly showing he was not in the area at the time of the rape and his DNA was excluded from being the DNA evidence from the rape.

69.    Defendants knew or should have known that there was not probable cause to arrest and charge Mr. Davis, causing him to be held in jail for 129 days and then placed on a tether for another 61 days. The actions of Defendants in light of this knowledge were extreme and outrageous.

70.    The events described above caused severe emotional distress and anxiety to Mr. Davis resulting in him having to obtain treatment for these symptoms.

71.    When the events alleged in this complaint occurred, Defendants were acting within the scope of their employment and under color of state law.

# COUNT I

## MALICIOUS PROSECUTION

### AS TO DEFENDANTS ADAM BAYLISS, KEVIN SNYDER

### AND KRISTEN ROGERS

72.   Mr. Davis incorporates by reference the foregoing paragraphs.

73.   Defendants did initiate a criminal prosecution against Plaintiff and

Defendants made, influenced, or participated in the decision to prosecute

Plaintiff.

74.   That there wasn't sufficient probable cause for Defendants' criminal

prosecution of Plaintiff and Detectives Kevin Snyder and Adam Bayliss did

utilize unduly suggestive tactics to witness.

75.   Defendants Detective Kevin Snyder, Detective Adam Bayliss and Lieutenant

Kristen Rogers acted under color of law but contrary to law, and

intentionally and unreasonably deprived Plaintiff of rights, privileges, and

immunities secured by the Constitution, laws of the United States, and 42

U.S.C. § 1983, including Plaintiff's right to be free from the initiation of

criminal prosecution without probable cause that he committed a crime, as

guaranteed by the Fourth and Fourteenth Amendments of the United States

Constitution.

76. As a consequence, the prosecution by Defendants of Plaintiff, Plaintiff suffered a deprivation of liberty.

77. The criminal prosecution was resolved in favor of Plaintiff.

78. As a direct result of the individual Defendant police officers abuse of the criminal investigatory process, Mr. Davis' reputation in the community has been damaged and he has suffered severe mental anguish, as well as economic and non-economic damages.

WHEREFORE, Plaintiff Xavier Jajuan Davis requests that this Honorable Court enter judgment against Defendants Detective Kevin Snyder, Detective Adam Bayliss and Lieutenant Kristen Rogers for compensatory and punitive damages in whatever amount the jury determines plus costs, pre-judgment and post-judgment interest, and actual attorney fees.

## COUNT II
## DEFAMATION
## AS TO ALL DEFENDANTS

79. Mr. Davis incorporates by reference the foregoing paragraphs.

80. The accusations that Mr. Davis committed the crimes as discussed above are false.

81.   The Defendants, with knowledge of the falsity of the accusations or in reckless disregard for their truth or falsity, proceeded to charge Mr. Davis with multiple crimes.

82.   Defendants actions proximately caused the publication of knowingly false accusations that Mr. Davis had committed a crime by third parties.

83.   The publication was not privileged.

84.   The publication of these charges has resulted in damage to Mr. Davis' reputation in the community, and economic loss including, but not limited to:

a.   Loss of employment and housing

b.   Emotional distress

c.   Humiliation, mortification, and embarrassment

d.   Severe anxiety requiring the use of medication for management

e.   Other damages that may arise during the course of discovery and the course of this trial

85.   Defendants' actions constituted defamation per se under MCL 600.2911(1).

WHEREFORE, Plaintiff Xavier Jajuan Davis requests that this Honorable Court enter judgment against Defendants for compensatory damages and punitive damages in whatever amount the jury determines plus costs, pre-judgment and post-judgment interest, and actual attorney fees.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## AS TO ADAM BAYLISS, KEVIN SNYDER AND KRISTEN ROGERS

86.    Mr. Davis incorporates by reference the foregoing paragraphs.

87.    At all relevant times, Defendants' conduct as outlined above was intentional.

88.    At all relevant times, Defendants' conduct as outlined above was extreme,
outrageous, and of such a character as not to be tolerated by a civilized
society.

89.    Defendants knew or should have known that their actions had a significant
probability of causing severe emotional distress to Mr. Davis.

90.    Defendants' conduct resulted in severe emotional distress to Mr. Davis.

91.    As a direct and proximate result of Defendants' conduct, Mr. Davis has
suffered damages in the manner outlined above, which are continuing.

WHEREFORE, Plaintiff Xavier Jajuan Davis requests that this
Honorable Court enter judgment against Defendants Detective Kevin
Snyder, Detective Adam Bayliss and Lieutenant Kristen Rogers for
compensatory and exemplary damages in whatever amount the jury
determines plus costs, pre-judgment and post-judgment interest, and actual
attorney fees.

## COUNT IV

## §1983 FALSE ARREST
## AS TO DEFENDANTS DETECTIVE KEVIN SNYDER
## AND LIEUTENANT KRISTEN ROGERS

92.   Mr. Davis incorporates by reference the foregoing paragraphs.

93.   At all relevant times, Mr. Davis had a constitutional right to be free from
      unlawful imprisonment and restraint on his freedom of movement.

94.   Defendants Lieutenant Kristen Rogers and Detective Kevin Snyder
      unlawfully restrained/imprisoned Mr. Davis as to his personal liberty, and
      freedom of locomotion through coercion and through physical force, without
      proper legal process.

95.   At all relevant times, Defendants Lieutenant Kristen Rogers and Detective
      Kevin Snyder acted without reasonable grounds to believe that Mr. Davis
      had committed a crime, or that it was otherwise legally necessary to restrain
      or imprison him.

96.   As a direct and proximate foreseeable result of Lieutenant Kristen Rogers
      and Detective Kevin Snyder's actions as set forth previously, Mr. Davis
      suffered severe injuries, including physical injuries, physical pain and
      suffering, mental pain and suffering, emotional distress, embarrassment,
      humiliation, and loss of a normal life.

97.   As a result of Lieutenant Kristen Rogers and Detective Kevin Snyder's
      conduct, Mr. Davis suffered injuries and is entitled to recover all damages

allowable for constitutional violations such as 42 U.S.C. § 1983, including compensatory damages, special damages, economic damage, and costs and attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Xavier Jajuan Davis requests that this Honorable Court enter judgment against Defendants Detective Kevin Snyder, Detective Adam Bayliss and Lieutenant Kristen Rogers for compensatory damages and punitive damages in whatever amount the jury determines plus costs, pre-judgment and post-judgment interest, and actual attorney fees.

## COUNT V
## §1983 FALSE IMPRISONMENT
## AS TO DEFENDANTS KRISTEN ROGERS, KEVIN SNYDER AND ADAM BAYLISS

98. Mr. Davis incorporates by reference the foregoing paragraphs.

99. Defendants Lieutenant Kristen Rogers, Detective Adam Bayliss and Detective Kevin Snyder acted under color of law but contrary to law, and intentionally and unreasonably deprived Plaintiff of rights, privileges, and immunities secured by the Constitution, laws of the United States, and 42

U.S.C. § 1983, including Plaintiff's right to be free from imprisonment without probable cause that he had committed a crime, as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff Xavier Jajuan Davis requests that this Honorable Court enter judgment against Defendants Detective Kevin Snyder, Detective Adam Bayliss and Lieutenant Kristen Rogers for compensatory damages and exemplary damages in whatever amount the jury determines plus costs, pre-judgment and post-judgment interest, and actual attorney fees.

### COUNT VI
### §1983 UNLAWFUL SEARCH AND SEIZURE
### AS TO ALL DEFENDANTS KRISTEN ROGERS, KEVIN SNYDER
### AND ADAM BAYLISS

100.   Mr. Davis incorporates by reference the foregoing paragraphs.

101.   Defendants unlawfully searched and seized Mr. Davis pursuant to a search warrant based on known fabrications, thereby deficient of probable cause and without any other legal justification, in violation of the Fourth and Fourteenth Amendments to the United States' Constitution.

102.  Upon information and belief, Defendants were aware of the misconduct of their fellow officer(s) with respect to the unlawful search and seizure of Mr. Davis, had a reasonable opportunity to intervene to prevent it, but failed to do so.

103.  As a result of Defendants' actions, Mr. Davis suffered substantial injuries and is entitled to recover all damages allowable for constitutional violations such as 42 U.S.C. § 1983, including compensatory damages, special damages, economic damages, and costs and attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Xavier Jajuan Davis requests that this Honorable Court enter judgment against Defendants Detective Kevin Snyder, Detective Adam Bayliss and Lieutenant Kristen Rogers for compensatory damages and exemplary damages in whatever amount the jury determines plus costs, pre-judgment and post-judgment interest, and actual attorney fees.

## COUNT VI
## §1983 MUNICIPAL LIABILITY

104.  Mr. Davis incorporates by reference the foregoing paragraphs.

105.  Defendant City of Grand Rapids has established practices, policies and/or customs which directly and proximately caused the injuries and damages suffered by Plaintiff.

106.  Defendant City of Grand Rapids has established a practice, policy, and/or custom of improperly training, allowing, encouraging, and/or expecting its police officers to enforce laws in any way they deem fit, without regard to the constitutional rights of individuals to be free from false arrest, false imprisonment, and/or malicious prosecution.

107.  Defendant City of Grand Rapids has established a practice, policy, and/or custom of failing to adequately supervise, investigate, or discipline its police officers in general, and Defendants Lieutenant Kristen Rogers, Detective Adam Bayliss and Detective Kevin Snyder in particular, when it became known or apparent that its police officers have violated the constitutional rights of individuals in the manner complained of in this lawsuit.

108.  By failing to properly hire, screen, train, monitor, supervise, investigate and/or discipline its police officers, Defendant City of Grand Rapids failed to adequately discourage its police officers from violating the constitutional rights of individuals.

109.  As a result of the above described practices, policies, and/or customs, police officers of Defendant City of Grand Rapids, including Lieutenant Kristen

Rogers, Detective Adam Bayliss and Detective Kevin Snyder, believed that their actions would not be properly monitored by their supervisors, and that misconduct would not be adequately investigated or sanctioned, but rather that it would be tolerated.

110.   In sum, the above-described practices, policies, and /or customs of the Defendant City of Grand Rapids demonstrate deliberate indifference towards the constitutional rights of individuals to be free from false arrest, false imprisonment and malicious prosecution.

111.   The practices, policies, customs, and/or deliberate indifference of the Defendant City of Grand Rapids were the moving force behind the constitutional violations that were committed against Plaintiff.

WHEREFORE, Plaintiff Xavier Jajuan Davis requests that this Honorable Court enter judgment against Defendant City of Grand Rapids for compensatory damages in whatever amount the jury determines, plus costs, interest, and actual attorney fees pursuant to 42 U.S.C. § 1988.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Plaintiff Xavier Jajuan Davis requests that this Honorable Court enter judgment against Defendants for compensatory, exemplary, and punitive damages in whatever amount the jury determines,

plus costs, pre-judgment interest, post-judgment interest, and actual attorney

fees pursuant to 42 U.S.C.  § 1988.

                                        Respectfully Submitted,

                                        /s/ Mark Linton

Date:  October 12, 2018                 _____
                                        Mark Linton (P66503)
                                        Attorney for Plaintiff